UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ALFONSO COLLAZO, :
    Plaintiff, :
     :
v. : CASE NO. 3:16-cv-00528 (VAB)
     :
STATE OF CONNECTICUT :
DEPARTMENT OF SOCIAL SERVICES, :
    Defendant. :

## RULING ON MOTION TO DISMISS

Alfonso Collazo ("Plaintiff"), *pro se*, brings employment discrimination and retaliation claims against the State of Connecticut Department of Social Services ("Defendant," or "DSS") under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act ("Title VII"), and the Connecticut Fair Employment Practices Act ("CFEPA"). DSS has moved to dismiss all of Mr. Collazo's claims under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Def. Mot. to Dismiss, ECF No. 18.

For the reasons outlined below, DSS's [18] Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. The motion is GRANTED as to Mr. Collazo's disability claims under the ADA, and the motion is DENIED as to Mr. Collazo's hostile work environment and retaliation claims under Title VII.

## I. FACTUAL SUMMARY[1]

Alfonso Collazo, who is Hispanic, worked for DSS as a shopkeeper for over twenty-six (26) years. Compl. at 3, ECF No. 1. He claims that his duties in that role were primarily physical, and that, in 2005, he suffered a back injury in the workplace. *Id.* Following this injury,

---

[1] The following facts are taken from Mr. Collazo's Complaint, ECF No. 1.

1

his doctor ordered him to perform only "light duty" without "bending or lifting." *Id.* He alleges that his superiors were aware of these physical limitations. *Id.*

In February of 2014, DSS assigned him a new supervisor, Bernard Szreders. *Id.* According to Mr. Collazo, in March of 2014, Mr. Szreders called him "boy" on two occasions. CHRO Compl. at 2, Compl. Ex. B, ECF No. 1-2.[2] Mr. Collazo alleges that he told Mr. Szreders not to call him "boy," and that, in response, Mr. Szreders stated: "Great. Now I have to deal with this Spic who I'd rather put a bullet in, than argue with." *Id.*

Later that same month, Mr. Collazo states that he reported this interaction to DSS's Director of Affirmative Action, Astread Ferron-Poole, as well as to the Director of Personnel and the Deputy Commissioner. *Id.* at 2; Compl. at 3, ECF No. 1. Mr. Collazo claims that, following this internal complaint, he was subjected to harassment in the workplace that ultimately concluded with his departure. *Id.* He states that, following his internal complaint, Mr. Szreders docked his pay on May 22, 2014 after a doctor's appointment took longer than expected, upgraded a verbal warning into a written warning against Mr. Collazo in April 2014, denied Mr. Collazo's requests for vacation days, and "micromanaged" his activities, including by requiring him to complete a daily report and questioned him about the amount of time he would spend in the restroom. CHRO Compl. at 3, Compl. Ex. B, ECF No. 1-2.

Mr. Collazo also claims that Mr. Szreders made his work environment difficult by deliberately disregarding Mr. Collazo's doctor's orders, exacerbating his back injury. *Id.* According to Mr. Collazo, Mr. Szreders ordered him to perform physical duties despite clear doctor's orders that he was to be restricted to "light duty with no bending or lifting...." *Id.* Mr.

---

[2] Mr. Collazo's Complaint includes all facts alleged in his CHRO Complaint, which he attached to his Complaint as Exhibit B. *See Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (pleadings include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 10(c).

2

Collazo also alleges that, as an accommodation to his physical limitations, he requested a transfer to the Purchasing Department from his post at the Facilities Management Department, where he was required to perform more physical labor, but his request was denied. CHRO Compl. at 3, Compl. Ex. B, ECF No. 1-2. Mr. Collazo alleges that he suffered severe depression as a result of this treatment, and that he has not been able to return to work in this environment given his physical limitations. *Id.*

On September 1, 2014, Mr. Collazo filed for disability retirement from the State of Connecticut, and, on March 14, 2016, DSS notified him that they were no longer holding his position. Compl. at 3, ECF No. 1. Mr. Collazo filed an administrative complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") on June 16, 2014, and the Equal Employment Opportunities Commission ("EEOC") issued a release of jurisdiction on February 9, 2015. CHRO Compl., Compl. Ex. B, ECF No. 1-2; EEOC Letter, Compl. Ex. A, ECF No. 1-1. He then filed suit in this Court on April 5, 2016.

## II. STANDARD OF REVIEW

A district court may not entertain a case where it lacks subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). Generally, the plaintiff bears the burden to prove, by a preponderance of the evidence, that the court has subject matter jurisdiction over its claims. *Id*. This burden is met "as long as [the] complaint states a colorable federal claim." *Rodriguez v. DeBuono,* 175 F.3d 227, 233 (2d Cir. 1999) (citation omitted). When reviewing a motion to dismiss under Rule 12(b)(1), "a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Serv. Corp. v. Drakos,* 140 F.3d

129, 131 (2d Cir. 1998) (citation omitted). The court, however, must also refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *APWU v. Potter,* 343 F.3d 619, 623 (2d Cir. 2003) (citation omitted).

A district court may also dismiss a case for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level" and "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570 (2007). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557 (2007). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Cases brought by *pro se* plaintiffs must be reviewed "with a lenient eye, allowing borderline cases to proceed." *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir. 1998) (citation omitted). Generally, *pro se* litigants "are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *see Haines v. Kerner,* 404 U.S. 519, 520 (1972) (holding that the allegations in a *pro se* complaint are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers").

**III.    DISCUSSION**

DSS seeks dismissal of Mr. Collazo's Complaint in its entirety. DSS argues that the ADA and CFEPA claims should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction, asserting that such suits are barred by the Eleventh Amendment. He also seeks dismissal of the Title VII hostile work environment and retaliation claims under Rule 12(b)(6), arguing that (1) the racial slur alleged by Mr. Collazo is insufficient to state a hostile work environment claim; and (2) the alleged adverse actions are insufficient to support a retaliation claim.

For the reasons outlined below, DSS's motion to dismiss is granted as to Mr. Collazo's ADA and CFEPA claims and denied as to Mr. Collazo's Title VII claims.

**A.  ADA**

DSS seeks dismissal of Mr. Collazo's disability claims under the ADA because the Eleventh Amendment prevents this Court from having subject matter jurisdiction over those claims. In support of this argument, DSS explains that Title I of the ADA provides the exclusive remedy for disability suits against employers with fifteen or more employees and that a plaintiff may not bring claims against a state agency under this statutory provision. Def. Mem. in Supp. at 5-7, ECF No. 18. The Court agrees.

Title I of the ADA, as amended, prohibits a private, state, or local government employer with fifteen or more employees from discriminating against a qualified individual with a disability. 42 U.S.C. §§ 12101, *et seq.* Title I explicitly addresses employment, 42 U.S.C. § 12111, and provides the exclusive remedy for employees making discrimination claims against employers covered by that Title. *See Mary Jo Co. v. New York State and Local Retirement System*, 707 F.3d 144, 171 (2d Cir. 2013) ("[T]he [ADA] unambiguously limits employment

discrimination claims to Title I. A public employee may not bring a Title II claim against his or her employer, at least when the defendant employer employs fifteen or more employees.").[3]

Public employees, however, may not avail themselves of the remedy provided by Title I, as the Eleventh Amendment bars suits in federal court against a state (or its agencies) unless Congress validly abrogated states' immunity or the state expressly consents to being sued. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001). In *Garrett*, the Supreme Court held that the ADA does not validly abrogate states' Eleventh Amendment immunity from private lawsuits, at least with respect to suits for damages under Title I. *Id.* The Court found that Eleventh Amendment immunity does not protect states against conduct that is enforceable under the Fourteenth Amendment, *see id.* at 364 (recognizing that "the Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provisions of § 5 the Fourteenth Amendment").

The Supreme Court, however, ultimately concluded that the ADA does not constitute a valid enforcement action under Section 5 of the Fourteenth Amendment. *Id.* at 368-374 ("States are not required by the Fourteenth Amendment to make special accommodations for the disabled.... [T]o uphold the Act's application to the States would allow Congress to rewrite the Fourteenth Amendment law laid down by this Court...."). Thus, Eleventh Amendment immunity protects states from being subject to suit under the ADA. *Id.*

In light of the Supreme Court's ruling in *Garrett*, courts within this Circuit regularly dismiss ADA claims for lack of subject matter jurisdiction when those claims are brought against states and their agencies by public employees. *See Fleming v. State Univ. of New York*, 502 F.

---

[3] Title II of the ADA prohibits a state or local government or "any public entity that provides public transportation, to discriminate against a qualified individual with a disability in the provision of public services...." BARBARA LINDEMANN. ET AL., 1 EMPLOYMENT DISCRIMINATION LAW 13–9 (5 ed. 2012); 42 U.S.C. §§ 12131–12165 (2006).

6

Supp. 2d 324, 334 (E.D.N.Y. 2007) ("[T]he Court notes that to the extent that plaintiff had styled his lawsuit as sounding in Title II in an effort to circumvent *Garrett*'s holding that Title I's prohibition on disability-based employment discrimination does not apply to state employers, the Court may not permit him to do so."); *Reddick v. Southern Conn. State Univ.*, No. 3:10-cv-1118 (JBA), 2011 WL 1833288 at *2 (D. Conn. May 12, 2011) ("Unlike claims brought under Title I, claims for money damages under Title II of the ADA are not barred by the Eleventh Amendment.").

Because the Eleventh Amendment bars claims brought under Title I of the ADA, the Court lacks subject matter jurisdiction over these disability claims and all claims for monetary relief under the ADA are appropriately dismissed.[4]

### B. CFEPA

Mr. Collazo's Complaint alleges without specificity that DSS's actions violated the Connecticut Fair Employment Practices Act ("CFEPA"). Compl., ECF No. 1. DSS argues that any claims Mr. Collazo is attempting to bring under §§ 46a-60(a)(1) or 46a-58(a), which govern causes of action under CFEPA, are barred by the Eleventh Amendment because the State did not make any clear declaration of its intention to submit to federal jurisdiction. The Court agrees.

---

[4] The Court notes that, while claims for monetary relief may be barred by the doctrine of sovereign immunity, the Court's decision in *Garrett* does not leave persons with disabilities without recourse against disability discrimination. Unlike suits for monetary damages, the Eleventh Amendment does not bar Title I ADA suits against states for prospective injunctive relief. *See Garrett*, 531 U.S. at 374 n. 9 (noting that the ADA "can be enforced ... by private individuals in actions for injunctive relief under [the doctrine of] *Ex parte Young*"); *Henrietta D. v. Bloomberg*, 331 F.3d. 261, 288 (2d Cir. 2003) ("[T]he *Ex parte Young* exception to the Eleventh Amendment bar to suit is viable under the ADA."); *Marino v. City University of New York*, 18 F. Supp. 3d 320, 333 (noting that, in order to determine whether the *Ex parte Young* doctrine circumvents an Eleventh Amendment bar to suit, "a court need only conduct a straightforward inquiry into whether the complaint [1] alleges an ongoing violation of federal law and [2] seeks relief properly characterized as prospective.") (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002)) (internal quotations omitted). Mr. Collazo's Complaint, however, does not request prospective injunctive relief under the ADA.

7

It is settled in this District that claims against a state or its agencies under CFEPA may not be brought in federal court because the State of Connecticut has not expressly waived its Eleventh Amendment immunity to such suits. *See Pawlow v. Dep't of Emergency Servs. & Pub. Prot.*, 172 F. Supp. 3d 568, 577–78 (D. Conn. 2016) (aggregating cases); *see also Moore v. Department of Correction*, No. 3:13-CV-01160 (JAM), 2017 WL 2413690, at *8 (D. Conn. June 2, 2017) ("[This court] will grant defendant's motion for summary judgment on plaintiff's CFEPA claim . . . because the Eleventh Amendment plainly bars relief against the DOC as an entity of the State of Connecticut and because neither the State nor Congress has waived Eleventh Amendment immunity against CFEPA claims in federal court.") (citation omitted). Rather, the State of Connecticut has waived its immunity only with regard to CFEPA claims brought in Connecticut's state court and that waiver does not extend to federal courts. *See e.g. Brown v. Conn. Dept. of Children and Families,* No. 3:08-cv-1478 (MRK), 2010 WL 2220580 at *14–15 (D. Conn. May 27, 2010) (aggregating cases); *Lyon v. Jones*, 168 F. Supp. 2d 1, 6 (D. Conn. 2001) (Hall J.) ("The state has clearly waived immunity to claims brought under CFEPA as to cases brought in the Connecticut state courts... However, this court has found that there is nothing in the Connecticut General Statutes that constitutes an express waiver of Eleventh Amendment immunity for CFEPA claims."); *Walker v. Connecticut*, 106 F. Supp. 2d 364, 369 (D. Conn. 2000) (Burns, J.) ("The only way Plaintiff may bring a CFEPA claim in federal court against the State is by the consent of the State to be sued in that forum. The State has waived its immunity, but only as to cases brought in the Superior Court.").[5]

---

[5] The statutory language of CFEPA unambiguously states that discrimination complaints against state agencies may be brought in Connecticut's state courts. *See* Conn. Gen. Stat. § 46a-100 ("Any person who has filed a complaint with the commission . . . may bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred, the judicial district in which the respondent transacts business or the judicial district in which the complainant resides . . . ."). CFEPA §§ 46a-99 and 46a-100, however, do not

Because the Court lacks subject matter jurisdiction over Mr. Collazo's CFEPA claims, DSS's motion is granted with respect to those claims and Mr. Collazo's state law claims are dismissed under Rule 12(b)(1).

**C. Title VII**

Mr. Collazo has raised two separate claims under Title VII: a claim of hostile work environment and a retaliation claim. Compl., ECF No. 1. DSS seeks dismissal of all Title VII claims, arguing that the Complaint fails to state a claim, as required under Rule 12(b)(6). Def. Mem. in Supp. at 10-15, ECF No. 18. The Court disagrees, and both Title VII claims will be permitted to proceed at this stage of the case.

**1. Hostile Work Environment**

DSS argues that the facts alleged in the Complaint do not satisfy the basic elements of a hostile work environment claim. The Court disagrees.

In order to state an actionable hostile work environment claim, a plaintiff must allege that he or she was subjected to harassment that was severe or pervasive enough "to alter the conditions of the victim's employment and create an abusive working environment, and ... that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks and citations omitted). The plaintiff must demonstrate that the workplace atmosphere was "permeated with 'discriminatory intimidation, ridicule, and insult' ... that is 'sufficiently severe or pervasive to alter the conditions

---

explicitly authorize actions in any federal forum and, consistent with the established principle that a state's waiver of immunity in its own courts does not automatically indicate consent to federal jurisdiction, courts have interpreted this silence as restrictive. *See Walker*, 106 F. Supp. 2d at 369 ("A state does not consent to suit in federal court by consenting to suit in the courts of its own creation.") (quoting *Smith v. Reeves*, 178 U.S. 436, 441–445 (1900)); *Beers v. State*, 61 U.S. 527, 529, (1857) ("[T]he sovereign cannot be sued in its own courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege, and permit itself to be made a defendant in a suit by individuals, or by another State. And as this permission is altogether voluntary on the part of the sovereignty, it follows that it . . . may withdraw its consent whenever it may suppose that justice to the public requires it.").

of the victim's employment and create an abusive working environment...." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

"Courts look at all circumstances to ascertain whether an environment is sufficiently hostile or abusive to support a claim." *Leibovitz v. N.Y. City Transit Auth.,* 252 F.3d 179, 188 (2d Cir. 2001). These circumstances include factors such as the frequency of the discriminatory conduct; the severity of the discriminatory conduct; whether the conduct is physically threatening or humiliating (as opposed to merely offensive); and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23. These factors are to be evaluated holistically, and no single one is required. *Id.*

Furthermore, the test for sufficiency of a hostile work environment claim has both subjective and objective prongs: the plaintiff must subjectively perceive the environment to be abusive, and the discriminatory conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment.... An environment that a reasonable person would [not] find hostile or abusive ... is beyond Title VII's purview." *Id.* at 21.

Here, DSS focuses its arguments exclusively on one incident in March of 2014 during which Mr. Collazo's supervisor, Mr. Szreders, allegedly called him a racial slur, arguing that this event is insufficient to state a claim of hostile work environment. Def. Mem. in Supp. at 13, ECF No. 18-1 ("Here, the one-time incident about which Plaintiff complains is insufficient, as a matter of law to meet the threshold of severity of pervasiveness required for a hostile work environment claim.").

If Mr. Collazo's only allegation had been that his supervisor called him a racial slur on a single occasion, DSS may have some valid basis to seek dismissal of Mr. Collazo's claims at this

stage. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) ("[M]ere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII.") (internal quotations and marks omitted); *Dorrilus v. St. Rose's Home*, 234 F. Supp. 2d 326, 335 (S.D.N.Y. 2002) (finding that supervisor's isolated uses of derogatory slurs to refer to a defendant does not alter conditions of employment enough to implicate Title VII); *Stembridge v. City of New York*, 88 F. Supp. 2d 276 (S.D.N.Y. 2000) (finding that "seven instances [of offensive comments] over three years does not create a work environment permeated with racial hostility").[6]

Mr. Collazo's racially charged interaction with his supervisor in March of 2014, however, is not Mr. Collazo's only allegation regarding the hostility and abusiveness of his work environment. As the Supreme Court noted in *Harris*, "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris*, 510 U.S. at 23. In addition to alleging that his supervisor used a racial slur in a threatening manner on a single occasion, Mr. Collazo also alleges that, in the aftermath of his decision to report the incident to the Affirmative Action Department, this same supervisor and other personnel of DSS engaged in a continuous campaign of discriminatory harassment through specific actions, including the following: denying his request for a transfer; giving him a written warning in April, 2014; docking his pay on May 22, 2014; denying his requests for vacation days and micromanaging his daily activities; and violating explicit orders from his doctor restricting him to light duty with no

---

[6] Notably, while DSS's filings contain numerous citations to cases in which courts dismissed Title VII hostile work environment claims at the summary judgment stage, under Rule 56, DSS has not identified any comparable case law in which courts dismissed similar hostile work environment claims at the motion to dismiss stage, under Rule 12(b)(6). The only case cited by DSS in which the court dismissed hostile work environment claims at the motion to dismiss stage is *Marcus v. Barilla Am. NY, Inc.*, 14 F. Supp. 3d 108 (W.D.N.Y. 2014). This case, however, is inapposite. The plaintiff's hostile work environment claims in *Marcus* focus on several incidents of "yelling," and the court found that the plaintiff failed to make any factual allegations suggesting that such yelling was based on a discriminatory motive. Thus, the court in *Marcus* ultimately granted the motion to dismiss not because of the lack of severity of the defendant's conduct, but rather because of the lack of causation, which is not at issue here.

bending or lifting, leading to the exacerbation of a previous injury. Compl., ECF No. 1. When considering whether Mr. Collazo has stated a hostile work environment claim at this early stage of the litigation, the Court must take all of these circumstances into account. *Harris*, 510 U.S. at 23.

It is evident from Mr. Collazo's Complaint that he subjectively perceived his work environment as transformed following the incident on March 14, 2014. The Complaint states Mr. Collazo's belief that, subsequent to the incident and his meeting with the Affirmative Action Department, he became the victim of harassment perpetrated by his supervisor and other DSS personnel. Compl. at 3, ECF No. 1; CHRO Compl. at 7-8, Compl. Ex. B, ECF 1-2. He further alleges that this harassment had a significant and detrimental impact on his mental and physical well-being. *See* Compl. at 3, ECF No. 1 (noting that the alleged harassment "has caused me severe depression and further physical limitations").

Drawing all inferences in favor of Mr. Collazo, as is required at this stage, these perceptions could be considered objectively reasonable. *See Harris*, 510 U.S. at 23 (factors for determining whether a work environment is objectively hostile or abusive include (1) the frequency and severity of the discriminatory conduct, (2) whether it is threatening or humiliating or merely offensive, and (3) whether it unreasonably interferes with the employee's work performance.). Mr. Collazo has alleged that his superiors at DSS engaged in racially-motivated misconduct by willfully disregarding the "light duty" restrictions ordered by his doctor following his meeting with the Affirmative Action Department, conduct that allegedly ultimately led to the exacerbation of his previous back injury and the substantial debilitation of his physical and mental condition. Compl. at 3, ECF No. 1. Construing all allegations in the light most favorable

12

to Mr. Collazo, he has plausibly alleged that his superiors at DSS interfered with his work performance in a manner that was humiliating, severe, and injurious.

Taken together, these allegations are sufficient to state a hostile work environment claim under Title VII. Accordingly, at this early stage of the case, DSS's motion is denied with respect to this claim.

### 2. Retaliation

Finally, DSS seeks dismissal under Rule 12(b)(6) of any claims that DSS retaliated against Mr. Collazo in violation of Title VII, arguing that Mr. Collazo has not alleged sufficient adverse employment action on the part of DSS to state a *prima facie* retaliation case. Def. Mem. in Supp. at 13-15, ECF No. 18-1; Def. Reply. Br. at 5, ECF No. 25 (arguing that that Mr. Collazo's allegations of adverse employment actions lack sufficient substance or specificity "to rise above the [threshold] level of petty slights and annoyances"). The Court disagrees.

Title VII "prohibits employers from retaliating against any employee because that individual has opposed any practice made unlawful by Title VII." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (citing 42 U.S.C. § 2000e–3(a)) (internal quotations omitted). To establish a *prima facie* case of retaliation under Title VII, the plaintiff bears the initial burden to submit "evidence that []he 'participated in a protected activity,' 'suffered an adverse employment action,' and 'that there was a causal connection between [his] engaging in the protected activity and the adverse employment action.'" *Id.* (quoting *Gorzynski v. Jet Blue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010)). The parties do not dispute that Mr. Collazo engaged in protected activity when he filed an internal complaint with the Affirmative Action Department; rather, DSS argues that Mr. Collazo has failed to state a claim with respect to the second element, adverse employment action.

13

An adverse employment action is any action that causes the Plaintiff to "endure[] a materially adverse change in the terms and conditions of employment . . . [and a] materially adverse change is one that has an attendant negative result, a deprivation of a position or an opportunity." *Gutierrez v. City of N.Y.*, 756 F. Supp. 2d at 506 (citations and internal quotation marks omitted). Termination of employment or discharge from employment are therefore inherently adverse employment actions. *Id.*

Termination, however, is not the only adverse employment action recognized in Title VII claims. Courts in this Circuit have also recognized the creation of a hostile work environment as an adverse employment action. *Villar v. City of N.Y.*, 135 F. Supp. 3d 105, 137 (S.D.N.Y. 2015) (evaluating argument that plaintiff was subjected to a "retaliatory hostile work environment" at summary judgment stage); *Sclafani v. PC Richard & Son,* 668 F. Supp. 2d 423, 439 (E.D.N.Y. 2009) (recognizing that "unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy [that prong] of the retaliation *prima facie* case") (internal marks and quotations omitted). "To establish that a retaliatory hostile work environment constitutes a materially adverse change that might dissuade a reasonable worker from reporting activity prohibited by Title VII, a plaintiff must satisfy the same standard that governs hostile workplace claims...." *Id*. at 438 (citation and internal quotation marks omitted).

DSS argues that Mr. Collazo's allegations of harassment were not severe, frequent, or objectively physically threatening, and therefore do not meet the threshold requirement for a retaliatory hostile work environment action. Def. Mem. in Supp. at 14, ECF No. 18-1. According to DSS, Mr. Collazo's allegations regarding the issuance of a written warning, docking pay, denying requests for vacation days and micromanaging do not rise above the level of "[p]etty slights or minor annoyances that often take place at work and that all employees

14

experience [and thus] do not constitute actionable retaliation." *Hicks v. Baines*, 593 F. 3d 159, 165 (2d Cir. 2010) (internal quotations and marks omitted). DSS, however, ignores Mr. Collazo's allegation that his supervisor purposefully violated his work restrictions forbidding bending or lifting. Compl. at 3, ECF No. 1. According to Mr. Collazo, this alleged misconduct on the part of his supervisor was intentional, humiliating, and mentally and physically injurious. *Id.*

Mr. Collazo has also alleged that DSS retaliated against him by denying his request for a transfer to the Purchasing Department. *Id.* The Complaint suggests that Mr. Collazo's transfer request was motivated by the desire to escape the retaliatory abuses of his supervisor as well as to assume less physically demanding job duties, as he was suffering from a back injury. *Id.*; CHRO Compl. at 5, Compl. Ex. B, ECF 1-2. "[C]ourts in this Circuit have generally declined to find that transfers (or denials of transfers) amount to adverse employment actions ... where the action results merely in an inconvenience...." *Krachenfels v. N. Shore Long Island Jewish Health Sys.*, No. 13-CV-243 (JFB) (WDW), 2014 WL 3867560 at *17 (E.D.N.Y. July 29, 2014) (citation and internal quotation marks omitted). Nevertheless, Mr. Collazo's allegations indicate that the denial of his transfer request exposed him to ongoing harassment and physical tasks he was unable to safely perform, thereby resulting in physical and mental injuries serious enough to render him incapable of performing his job, suggesting more than mere inconvenience here.

Taking all of Mr. Collazo's factual allegations as true and drawing all inferences in the light most favorable to Mr. Collazo, the Complaint contains sufficient allegations to state a claim for retaliation under Title VII. Accordingly, DSS's motion to dismiss is denied as to this claim.

## IV. CONCLUSION

DSS's [18] Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. The motion is GRANTED as to Mr. Collazo's disability claims under the ADA, and the motion is DENIED as to Mr. Collazo's hostile work environment and retaliation claims under Title VII.

SO ORDERED at Bridgeport, Connecticut this 20th day of September, 2017.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT COURT